No. 3--02--0064 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2003

In
 
Re
 Detention of ) Appeal from the Circuit Court

JEFFREY HARGETT, )    of the 21
st
 Judicial Circuit

) Iroquois County, Illinois,

THE PEOPLE OF THE STATE OF )

ILLINOIS, ) 

     )

Petitioner-Appellee, ) No. 00--MR--10 

) 

v. ) 

) 

JEFFREY HARGETT, ) Honorable

) Gordon L. Lustfeldt,

Respondent-Appellant. ) Judge Presiding.

_________________________________________________________________

Modified Upon Denial of Rehearing

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

The Respondent, Jeffrey Hargett, pled guilty to aggravated criminal sexual assault in two separate cases.  720 ILCS 5/12--14 (West 1992).  He was sentenced to concurrent terms of 12 years’ imprisonment.  Before his release, the State filed a petition alleging that the respondent was a sexually violent person and should be detained under the Sexually Violent Persons Commitment Act (Act).  725 ILCS 207/1 
et
 
seq.
 (West 2000).  After a jury trial, the respondent was found to be a sexually violent person under the Act.  725 ILCS 207/1 
et
 
seq
.  (West 2000).  Following a dispositional hearing, the trial court ordered the respondent to be committed for institutional care in a secure setting.  On appeal, the respondent argues that the trial judge erred  by:  (1) failing to recuse himself; (2) refusing him a 
Frye
 hearing and thereby admitting evidence that was not generally accepted within the scientific community; and (3) entering the dispositional order committing him to the Department of Human Services for institutional care in a secure setting.  We reverse and remand.

I.  FACTS

 On February 25, 2000, the State filed a petition seeking the commitment of the respondent to the Department of Human Services pursuant to the Act.  725 ILCS 207/1 
et
 
seq.
 (West 2000).  In the petition, the State alleged that: (1) the respondent had been serving concurrent terms of 12 years’ imprisonment for two cases of aggravated criminal sexual assault  (720 ILCS 5/12--14 (West 1992)); (2) he was within 90 days of his release time; (3) he had a mental disorder, pedophilia; and (4) he was dangerous because his mental disorders created a substantial probability that he would engage in acts of sexual violence.  

Before trial, counsel for respondent made an oral motion for substitution of the presiding judge, Gordon L. Lustfeldt.  The motion was  based upon the fact that Judge Lustfeldt was the elected State’s Attorney of  Iroquois County at the time the respondent pled guilty to the two cases of aggravated criminal sexual assault.  720 ILCS 5/12--14 (West 1992).  The respondent alleged that he could not obtain a fair hearing before Judge Lustfeldt because of the natural prejudices and biases that flow from those prosecutions.  The judge noted that the respondent had pled guilty eight years earlier and that he had no recollection of the cases and he did not handle the respondent’s two cases.  The judge noted that this situation did not require his automatic recusal.  Instead, he gave the respondent leave to file a motion for substitution of judge in writing and scheduled it for a hearing in front of Judge Duane O’Connor.  Judge O’Connor denied the motion and held that there was no actual evidence that Judge Lustfeldt was prejudiced or biased toward the respondent.  

The respondent also filed a motion to exclude testimony.  Specifically, he sought to exclude the testimony of Dr. Phil Reidda.  The respondent alleged that Dr. Reidda would testify that he could predict that the respondent would commit acts of sexual violence in the future.  The respondent noted that Reidda based his prediction on actuarial instruments which were designed to determine future behavior based upon past acts.  That evidence, the respondent contended, did not meet the requirements set out in 
Frye v. United States
, 293 F.2d 1013 (D.C.Cir.1923)
.  The trial judge treated the motion as a motion for a 
Frye
 hearing.  He then denied the motion.

At trial, Dr. Reidda testified that he was a licensed clinical psychologist and an independent practitioner who contracts with the Illinois Department of Human Services for evaluating individuals who may be committed.  He diagnosed the respondent with pedophilia.  With regard to the respondent’s risk of re-offending, Dr. Reidda testified that he used certain risk-assessment instruments, called Static-99, and MNSOST-R.  He testified that these tests showed that the respondent was at high risk to re-offend.  On cross-examination, Dr. Reidda admitted that he deviated from the testing instructions with regard to the respondent.  If he had followed the rules for this type of testing, the respondent would have been in a medium to low category for risk of re-offending.  Using the instructions given with the test, the respondent would have scored a three on the Static-99 test, which would mean his recidivism rate prediction would be somewhere between 14 and 24 percent.  Under the MNSOST-R test, his score of nine would have put him in a seven percent range of re-offending.

Dr. Agnes Jones, a clinical psychologist with the Department of Corrections, testified that she had interviewed the respondent and found that he was a candidate for civil commitment.  That conclusion was based upon three factors: (1) the two convictions for aggravated criminal sexual assaults with minor females (720 ILCS 5/12--14 (West 1992)); (2) the respondent’s failure to complete sex offender treatment; and (3) the opinions of other psychologists that he was not benefitting from treatment.  Jones testified that she used a method called Meta-Analysis by Hanson and Busierre to determine the respondent’s risk for future sexual offenses.  She described the method as utilizing a large number of studies involving sex offenders and recidivism and combining them in a statistical way that created factors used to determine offender recidivism.  Based upon the Meta-Analysis, she opined that there was a substantial possibility that the respondent would commit another act of sexual violence.

The respondent presented no evidence.  The jury returned a verdict finding the respondent to be a sexually violent person.  

At the dispositional hearing, Dr. Reidda testified that the respondent needed a secure, intensive sex offender clinical service, which only the Department of Human Services program could provide.  Dr. Robert Chapman, a psychiatrist, testified on behalf of the respondent.  Chapman said that although he believed that the respondent met the criteria for civil commitment, he opined that the respondent was a suitable candidate for out patient sexual offender treatment.  

The trial court refused to order conditional release.  Instead, it ordered the respondent to be committed to the Department of Human Services for institutional care in a secure setting. 

II.  ANALYSIS

A.  Motion for Substitution of Judge

On appeal, the respondent first argues that the trial judge committed reversible error by refusing to recuse himself when he was the State’s Attorney that prosecuted the underlying charges.  In response, the State argues that Judge Lustfeldt was not mandated to recuse himself because: (1) he was not an attorney in the "matter in controversy;" and (2) he never appeared on the record regarding the respondent’s plea of guilty in either of his two criminal cases.  In reply, the respondent argues that the "matter in controversy" in this case encompasses the two criminal prosecutions against the respondent, at which time Judge Lustfeldt was the State’s Attorney.  Further, the respondent notes that Judge Lustfeldt did in fact personally appear on behalf of the State in one of the cases.

A judge shall disqualify himself when his impartiality might reasonably be questioned, including proceedings in which the judge served as lawyer in the matter in controversy.  155 Ill. 2d R. 63 (C)(1)(b).  The phrase "matter in controversy" means the case currently pending before the court.  
People v. Vasquez
, 307 Ill. App. 3d 670, 718 N.E.2d 356 (1999).  A post-conviction proceeding is sufficiently related to the original proceeding to fall within the scope of Supreme Court Rule 63(C)(1)(b).  155 Ill. 2d R. 63(C)(1)(b).  
Vasquez
, 307 Ill. app. 3d at 674, 718 N.E.2d at 359. 

1.  "Matter in Controversy"

The State contends that Judge Lustfeldt was not an attorney in the "matter in controversy."  It argues that the petition it filed under the Act seeks civil commitment and has its own burden of proof.  See 725 ILCS 207/1 (West 2000).  Therefore, the State claims, this case is completely unrelated to the respondent’s underlying criminal convictions.  

We disagree.  At the civil commitment hearing, Dr. Jones testified that one of the factors that she used to conclude that the respondent was a candidate for civil commitment was his two prior convictions for aggravated criminal sexual assault.  720 ILCS 5/12--14 (West 1992).  In fact, the State used those convictions as a basis for its petition under the Act.  725 ILCS 207/1 
et
 
seq.
 (West 2000).  Like a post-conviction proceeding, we find that a petition under the Act for civil commitment is sufficiently related to the original prosecution that it falls within the scope of Rule 63 (C)(1)(b).  155 Ill. 2d R. 63(C)(1)(b); 
People v. Vasquez
, 307 Ill. App. 3d 670, 674, 718 N.E.2d 356, 359 (1999).  Therefore, if Judge Lustfeldt was involved in one of the underlying criminal cases, he should have recused himself.  

2.  Judge Lustfeldt’s Involvement in the Underlying Cases  

The State then contends that the parties agree that Judge Lustfeldt never appeared on the record regarding the respondent’s plea of guilty in his criminal cases.  However, in his reply brief, the respondent notes that Judge Lustfeldt appeared on behalf of the State on February 18, 1992, when the respondent appeared and withdrew his demand for a jury trial.  We have reviewed the record and verified that information.  

In cases where a trial judge was previously involved in the same criminal proceeding over which the judge eventually presided and in which the defendant was found guilty, our courts have examined the degree of involvement and found that when the judge’s activities were supervisory in nature, recusal was found unnecessary.  
People v. Thomas
, 199 Ill. App. 3d 79, 556 N.E.2d 1246 (1990) (trial judge served as chief of criminal division of State’s Attorney’s office and had supervisory authority over prosecution of defendant’s case but had no actual involvement in the prosecution of the case); 
People v. Burnett
, 73 Ill. App. 3d 750, 392 N.E.2d 235 (1979) (trial judge had been supervisor in State’s Attorney’s office when defendant’s case was pending and bond forfeiture hearing had been held).  These cases are distinguishable from the instant case.  Here, we are not concerned with the fact that Judge Lustfeldt was the State’s Attorney of Iroquois County when the respondent was prosecuted for the two cases.  However, the fact that he appeared in court on behalf of the State during one of those prosecutions, even on a routine motion, is sufficient evidence of involvement to require Judge Lustfeldt to recuse himself from these proceedings.  Accordingly, the trial judge committed reversible error when he failed to recuse himself from this case.

B.  Necessity of a 
Frye
 Hearing

Next, the respondent argues that the trial court committed reversible error by refusing his motion for a 
Frye
 hearing to consider the admissibility of  Dr. Reidda’s expert testimony.  Specifically, he contends that Reidda’s opinions were based on testing instruments which were not generally accepted in the scientific community and did not meet the requirements of 
Frye v. United States
, 293 F.2d 1013 (D.C.Cir.1923). 

In determining whether an expert is qualified to render an opinion based on novel scientific evidence, Illinois courts follow the test set forth in 
Frye v. United States
, 293 F.2d 1013 (D.C.Cir.1923).  The Frye standard, known as the "general acceptance test," provides that scientific evidence is admissible at trial only if the methodology or scientific principle upon which the opinion is based is "sufficiently established to have gained general acceptance in the particular field in which it belongs."   
Donaldson v. Central Illinois Public Service Co.
, 199 Ill. 2d 63, 77, 767 N.E.2d 314, 324 (2002).  The proponent of the evidence bears the burden of demonstrating that the scientific theory relied upon by the expert has gained general acceptance in the scientific field.  
Donaldson
, 199 Ill. 2d at 77, 767 N.E.2d at 324.  A reviewing court will review the trial court’s admission of expert testimony on an abuse of discretion basis.  
People v. Eyler
, 133 Ill. 2d 173, 549 N.E.2d 268 (1989).

The Second District Appellate Court has recently reviewed this issue in 
People v. Taylor
, No. 2--01--0494 (December 30, 2002).   In 
Taylor
, the jury found the respondent to be a sexually violent person pursuant to the Act (725 ILCS 207/1 
et
 
seq.
 (West 2000)) after the trial court denied the respondent’s motion 
in
 
limine
 seeking to bar expert testimony regarding the results of actuarial instruments used to predict the likelihood that the respondent would reoffend.  
People v. Taylor
, No. 

2--01--0494 (December 30, 2002).  On appeal, the court held that psychological or psychiatric testimony of an expert predicated on actuarial instruments is scientific evidence subject to a 
Frye
 analysis.  
People v. Taylor
, No. 2--01--0494 (December 30, 2002).  Like the instant case, the experts in 
Taylor
 utilized MNSOST-R and Static-99 methods to help assess the respondent’s risk to reoffend. 

The 
Taylor
 court concluded that the MNSOST-R and Static-99 tests constituted scientific evidence.  Therefore, it held that the State must prove that these methodologies have gained general acceptance in the psychological and psychiatric communities.  
Taylor
, No. 2--01--0494 (December 30, 2002). 

We are persuaded by the reasoning in 
Taylor
.  Here, the State was attempting to introduce scientific evidence regarding the respondent’s likelihood to reoffend.  The respondent was therefore entitled to a hearing to determine whether that evidence had gained general acceptance in the psychological and psychiatric community.  The court abused its discretion when it denied the respondent’s motion for a 
Frye
 hearing.  As the actuarial evidence played an important role in the State’s case, we find that the admission of this evidence, without the safeguards afforded by a 
Frye
 hearing, constituted reversible error.

C.  Dispositional Hearing

Finally, the respondent argues that the trial court abused its discretion when it entered a dispositional order committing him to the Department of Human Services for institutional care in a secure setting.  Our holding on the previous two issues renders this issue moot.  Therefore, we will not address it.

III.  CONCLUSION

The trial judge committed reversible error by refusing to recuse himself when he was an attorney in the "matter in controversy" and he had appeared on behalf of the State in one of the respondent’s underlying criminal proceedings.  The trial court also committed error by denying the respondent’s request for a 
Frye
 hearing.

The judgment of the circuit court of Iroquois County is reversed.  This cause is remanded for further proceedings.

Reversed and remanded.

BARRY and LYTTON, J.J., concur.