2026 IL App (1st) 232206-U

FIRST DISTRICT,
SIXTH DIVISION
February 13, 2026

No. 1-23-2206

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 18101 |
| | ) | |
| ISAIAH BRADY, | ) | Honorable |
| | ) | John F. Lyke Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1  *Held*: We affirm the circuit court's dismissal of a successive postconviction petition at the second stage where defendant failed to satisfy the cause and prejudice standard.

¶ 2  Illinois law has long "recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause." *People v. Clark*, 2023 IL 127273, ¶¶ 61, 92 (citing *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 423 (1894)). Nonetheless, the decision in *Miller v. Alabama*, 567 U.S. 460 (2012), does not provide cause for a

young adult defendant like Isaiah Brady to bring a proportionate penalties claim for the first time in a successive postconviction petition. *People v. Spencer*, 2025 IL 130015, ¶ 31; *Clark*, 2023 IL 127273, ¶ 93; *People v. Moore*, 2023 IL 126461, ¶ 40. Accordingly, we affirm the dismissal of Brady's successive postconviction petition.

¶ 3                                I. BACKGROUND

¶ 4        In 2002, following a bench trial, Brady was convicted of the first degree murder of his 16-year-old girlfriend. The evidence shows Brady shot her in the head, abandoned their child, and fled to California, where he lied about his identity to police and others. He was sentenced to 25 years for murder and 25 years for the mandatory firearm enhancement, for a total sentence of 50 years' imprisonment. In 2005, we affirmed Brady's conviction and sentence. *People v. Brady*, No. 1-04-1152 (2005) (unpublished order under Illinois Supreme Court Rule 23). The Illinois Supreme Court denied leave to appeal. *People v. Brady*, 217 Ill. 2d 571 (2005).

¶ 5        In 2006, Brady filed an initial *pro se* postconviction petition, arguing, *inter alia*, that the circuit court erred by imposing "consecutive sentences." We affirmed the court's summary dismissal. *People v. Brady*, No. 1-06-3486 (unpublished order under Illinois Supreme Court Rule 23). The Illinois Supreme Court again denied leave to appeal. *People v. Brady*, 233 Ill. 2d 568 (2009). Thereafter, in 2010, Brady filed an unsuccessful *pro se* petition for a federal writ of *habeas corpus*. *United States* ex rel. *Isaiah Brady v. Hardy*, No. 10 C 2098, 2011 WL 4628686 (N.D. Ill. 2011), *aff'd Brady v. Pfister*, 711 F.3d 818 (7th Cir. 2013).

¶ 6        On September 24, 2020, Brady filed a motion for leave to file the instant successive postconviction petition through privately retained counsel. Brady argued that, based on new research in brain development and his age at the time of the offense (19), his *de facto* life sentence violates the proportionate penalties clause of the Illinois Constitution. Brady also claimed there

was a "need" to extend the rule from *Miller v. Alabama*, 567 U.S. 460 (2012), to young adults and that his sentence was unfair compared to the sentence given to a 40-year-old in an entirely different case, *People v. Illgen,* 145 Ill. 2d 35 (1991).

¶ 7 Brady's motion argued he established cause to file a successive petition where the substantive ruling in *Miller* was previously unavailable to him and he established prejudice where *Miller*'s sentencing principles retroactively applied to him. In support, Brady attached his original presentence investigation, a transcript of the sentencing hearing, and a report from a developmental psychologist, who interviewed Brady but did not make a diagnosis.

¶ 8 On October 8, 2020, the circuit court granted Brady leave to file the instant successive postconviction petition without making a finding that Brady established cause and prejudice. On December 12, 2020, the court clarified it was advancing the petition for second stage proceedings.

¶ 9 On November 9, 2022, the State filed a motion to dismiss Brady's petition alleging Brady failed to establish cause and prejudice for filing a successive postconviction petition. The State argued Illinois courts have made clear that emerging adults could not use *Miller* to meet the cause requirement of the cause-and-prejudice test to file a proportionate penalties claim in a successive postconviction petition. The State also noted that Brady was aware of his own age and neural development at the sentencing hearing and the psychologist's report relied on articles published before 2000.

¶ 10 On February 3, 2023, Brady filed a response to the State's motion to dismiss, arguing that he made a *prima facie* case of cause and prejudice because he could not have raised a proportionate penalties claim earlier because the *Miller* line of cases began in 2012, the sentencing court could not have considered the new brain science, and the State failed to address his comparison to *Illgen*. On August 9, 2023, Brady filed a supplemental petition, alleging: (1) his 50-year *de facto* life

sentence violates Illinois' proportionate penalties clause pursuant to *People v. Harris*, 2018 IL 121932; (2) his specific characteristics as a 19-year-old placed him in the same category as juveniles described in *Miller*; (3) the sentencing court did not engage in *Miller*-based considerations before imposing the sentence; and (4) his sentence "shocks the evolving standards of decency that mark the progress of a maturing society." Brady attached the same three exhibits from his motion for leave to file, and four other exhibits that are not a part of the record on appeal.

¶ 11    At the hearing on the State's motion to dismiss, the State reiterated that Brady failed to show cause and prejudice and emphasized that *Illgen* predated truth-in-sentencing and mandatory firearm enhancements. Defense counsel responded that Brady's petition had already advanced beyond the leave-to-file stage and that he had established cause and prejudice under *Harris*.

¶ 12    On November 1, 2023, the court granted the State's motion to dismiss Brady's successive postconviction petition, finding Brady had not met the cause and prejudice standard. The court explained that although *Miller* postdated Brady's sentencing, it did not apply to Brady (aged 19), and the sentencing court was not required to consider the enumerated factors, though it did so nonetheless. Brady appeals, contending reversal and remand for further postconviction proceedings are warranted because he established cause and prejudice for failing to bring his claim sooner.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, Brady contends he met the cause and prejudice test for filing a successive postconviction petition because he presented new, previously unavailable scientific evidence and developments in the law to show that when he was 19 years old and committed the offense, his brain was immature and still developing. Brady also contends that his petition made a substantial

showing that his 50-year sentence violated the proportionate penalties clause of the Illinois Constitution as applied to him.

¶ 15     The Post-Conviction Hearing Act (Act) provides a framework for incarcerated individuals to collaterally attack their convictions by establishing the substantial denial of a constitutional right during trial or sentencing. 725 ILCS 5/122-1(a)(1) (West 2018). The statute contemplates generally the filing of only one postconviction petition. *Clark*, 2023 IL 127273, ¶ 39; 725 ILCS 5/122-1(f) (West 2018). "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." *People v. Coleman*, 2013 IL 113307, ¶ 81. The filing of successive postconviction petitions is "highly disfavored." *People v. Bailey*, 2017 IL 121450, ¶ 39. Thus, a defendant may file a successive petition only under certain circumstances and must obtain leave of court to do so. *Clark*, 2023 IL 127273, ¶ 39.

¶ 16     This bar is relaxed under two grounds, including, as relevant here, where a defendant can satisfy the cause and prejudice test for failure to assert a claim in an earlier postconviction petition. *People v. Robinson*, 2020 IL 123849, ¶ 42; see also 725 ILCS 5/122-1(f) (West 2018) (codifying cause and prejudice test). In determining whether to grant leave to file a successive postconviction petition, the circuit court makes a cause and prejudice determination by conducting a preliminary screening of the defendant's motion to assess whether the motion adequately alleges facts making a *prima facie* showing of cause and prejudice. *Clark*, 2023 IL 127273, ¶ 47.

¶ 17     A defendant shows cause by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2018). A defendant shows prejudice by "demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* If the circuit court grants the defendant leave to file a successive

postconviction petition, the petition is docketed for second-stage proceedings. See *People v. Walker*, 2022 IL App (1st) 201151, ¶ 20.

¶ 18    While the circuit court advanced Brady's amended successive postconviction petition to the second stage, it did so without making a finding that he established cause and prejudice. The State may seek dismissal based on a defendant's failure to establish cause and prejudice at any stage in the post-conviction process. *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 37.

¶ 19    We review *de novo* both the question of whether a defendant demonstrated cause and prejudice and the propriety of a court's decision to dismiss a petition at the second stage. *Bailey*, 2017 IL 121450, ¶ 13; *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Under the *de novo* standard, a reviewing court performs the same analysis that the circuit court would perform, making the question on review whether the court's decision was correct as a matter of law. *People v. McDonald*, 2016 IL 118882, ¶ 32. In answering this question, we take as true all well-pled allegations in the petition that are not positively rebutted by the trial record. *Robinson*, 2020 IL 123849, ¶ 45.

¶ 20    The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. A sentence violates the proportionate penalties clause if "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002). The proportionate penalties clause provides broader protections than those provided in the eighth amendment. *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 69-78; *People v. Clemons*, 2012 IL 107821, ¶ 36.

¶ 21    At the time Brady filed his successive petition and supplement, he relied on new, evolving case law interpreting the proportionate penalties clause as applied to emerging adults to explain why he had not raised these claims in an earlier postconviction proceeding. See *e.g.*, *People v. Thompson*, 2015 IL 118151; *Harris*, 2018 IL 121932; *People v. House*, 2021 IL 125124; *People v. Buffer,* 2019 IL 122327. However, between the time Brady filed his motion and now, this area of law has narrowed significantly. See *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶¶ 47-55 (tracing the history of proportionate penalties clause jurisprudence as it relates to young adults serving life sentences).

¶ 22    To summarize: *Thompson* and *Harris* initially "opened the door" for young-adult offenders to demonstrate, through an adequate factual record, that their own "specific characteristics were so like those of a juvenile that imposition of a life sentence absent the safeguards established in *Miller* was cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community." *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 25; see *Thompson*, 2015 IL 118151; *Harris*, 2018 IL 121932.

¶ 23    However, in *People v. Moore*, 2023 IL 126461, our supreme court pointed out that "the essential legal tools" had always been available for petitioners to use during initial postconviction proceedings. *Moore*, 2023 IL 126461, ¶ 42. Because "*Miller* did not change the law applicable to young adults, it does not provide cause for the proportionate penalties challenges advanced" in a defendant's successive petition. *Id*. In applying *Moore*, this court observed that "*Thompson* and *Harris* opened the door only wide enough to accommodate claims involving mandatory life sentences that were raised in initial postconviction petitions." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62. See *e.g. People v. Brewer*, 2025 IL App (1st) 240088, ¶¶ 29-30, *People v. Minniefield*,

2025 IL App (1st) 240463-U, ¶ 54; *People v. Handy*, 2025 IL App (1st) 231568-U, ¶ 58; *People v. Davis*, 2025 IL App (1st) 231499-U, ¶¶ 19, 24.

¶ 24 Here, Brady's proportionate penalties claim is "nothing more than an extension of proportionate penalties claims that have existed all along" and he "did not need *Miller* or *Miller*-related proportionate penalties precedent to raise the claim now at issue." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62 (citing *People v. Dorsey*, 2021 IL 123010, ¶ 74; *Clark*, 2023 IL 127273, ¶¶ 92-93; *People v. Hilliard*, 2023 IL 128186, ¶ 28); see also *e.g. People v. McGee*, 2025 IL App (1st) 231591-U, ¶ 32; *People v. Scaggs*, 2025 IL App (1st) 240953-U, ¶ 49; *Handy*, 2025 IL App (1st) 231568-U, ¶ 58. Rather, "*Miller* was simply helpful support and not the basis for a new claim." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 63 (citing *Clark*, 2023 IL 127273, ¶ 93). As such, it does not satisfy the cause prong of the cause and prejudice test. *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62; *People v. Walsh*, 2022 IL App (1st) 210786, ¶ 33.

¶ 25 Brady selectively quotes *Clark* in arguing that he is "not foreclosed" from raising a proportionate claim. However, the *Clark* court made clear that the emerging adult cases it discussed "addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions." (Emphasis in original.) *Clark*, 2023 IL 127273, ¶ 88. While Brady was sentenced to a *de facto* life sentence, the proportionate penalties claim was not in his initial postconviction petition.

¶ 26 Brady cites two cases in support of his contention that he established cause, *People v. Green-Hosey*, 2025 IL App (2d) 240284 and *People v. Dobbey*, 2025 IL App (1st) 231929-U, both of which are distinguishable. First, *Green-Hosey* was a review of an initial postconviction petition that advanced to a third stage hearing. *Green-Hosey*, 2025 IL App (2d) 240284, ¶¶ 16-21. There is an important distinction between a proportionate penalties claim raised in an initial

postconviction petition and one asserted for the first time in a successive petition. *Moore*, 2023 IL 126461, ¶ 42.

¶ 27     Second, *Dobbey* involved a procedural history unlike the one before us. There, this court reviewed the dismissal of a *pro se* postconviction petition after second-stage proceedings on remand. *Dobbey*, 2025 IL App (1st) 231929-U, ¶ 2. The 19-year-old petitioner had been sentenced to 51 years' imprisonment after proceeding *pro se* and offering no mitigating evidence or argument. *Id.* ¶ 6. His sentence was vacated for improper admonishment, but, after a new hearing with no evidence or argument, the judge imposed the same sentence. *Id.* ¶¶ 8, 9. After 12 years of collateral actions in state and federal court, the petitioner filed supplements to his second successive postconviction petition, making a proportionate penalties claim supported by new scientific evidence and a memorandum. *Id.* ¶¶ 10-12. This court reversed the denial of leave to file and remanded for second stage proceedings, finding cause and prejudice under *Miller* and its progeny. *Id.* ¶ 13. On remand, however, the circuit court found that *Moore* "overruled" that mandate because petitioner could "no longer" satisfy the cause prong. *Id.* ¶ 23.

¶ 28     Citing *People v. Anderson*, 2015 IL App (2d) 140444, ¶ 27, this court held the law-of-the-case doctrine limited relitigation of the previously decided issue of cause and prejudice. *Dobbey*, 2025 IL App (1st) 231929-U, ¶ 31. The court explained that rulings on points of law by a reviewing court bind the circuit court on remand and on subsequent appeals. *Id.* It further held the ruling in *Moore*, 2023 IL 126461, did not fall within an exception to the doctrine because it was "not contrary" to its 2020 remand order. *Id.* ¶¶ 32-33.

¶ 29     The court also found *Moore* did not apply "to the present circumstances" because the petitioner's sentence was mandatory and "neither of the petitioner's sentencing hearing reveal that the petitioner knew or argued to the sentencing judge that Illinois law recognized the special status

of young adult offenders and that he should be treated differently because of his age." *Id.* ¶ 34. Given *Dobbey*'s unique procedural posture, it is distinguishable from the instant case. Unlike in *Dobbey,* this court has never addressed cause and prejudice in Brady's case, so the law-of-the-case doctrine does not apply. Further, Brady's sentencing judge did recognize the special status of Brady's age and considered the factors later codified in *Miller.*

¶ 30  In sum, the circuit court did not err in dismissing Brady's successive petition. Brady cannot establish cause for failing to raise a proportionate penalties claim earlier because the claim was available when he filed his initial postconviction petition. See *Moore*, 2023 IL 126461, ¶¶ 40-42; *Clark*, 2023 IL 127273, ¶ 66. As the supreme court has made clear, *Miller* is helpful support, not the source of a new proportionate penalties claim. *Clark*, 2023 IL 127273, ¶ 93. Because the absence of cause is dispositive, we need not reach the issue of prejudice.

¶ 31  Affirmed.